

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

CPHILLIPS@SIDLEY.COM
+1 202 736 8000

September 7, 2018

**Via ECF**

Catherine O'Hagan Wolfe, Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *In Re: Vitamin C Antitrust Litigation*, No. 13-4791

Dear Ms. O'Hagan Wolfe:

*Amicus Curiae* Ministry of Commerce of the People's Republic of China (the "Ministry") respectfully submits this supplemental letter brief in support of Defendants.

Defendants submit that Chinese law so clearly "require[d] price-fixing" of vitamin C exports from 2002 to 2005 that this Court can reverse the judgment and remand for dismissal without further addressing deference. Supp. Br. 1, 7. The Ministry agrees. But if the Court does re-examine deference under the standard newly announced by the Supreme Court, the Ministry respectfully submits that the Court should again defer to the Ministry's interpretation of regulations that the Ministry promulgated and has clear authority under Chinese law to interpret. This Court has already held that the Ministry's interpretation is "reasonable," and that Plaintiffs' contrary claim is "nonsensical." Nothing in the Supreme Court's decision is to the contrary.

1.     The Supreme Court addressed the standard of deference owed to a foreign sovereign's interpretation of foreign law. In its prior opinion, this Court adopted a "highly deferential rule," which the Supreme Court found too "unyielding." 138 S. Ct. 1865, 1875 (2018). The new standard is that a foreign state's "expressed view of its own law is ordinarily entitled to substantial but not conclusive weight." *Id*. at 1875. "In the spirit of 'international comity,' a federal court should carefully consider a foreign state's views about the meaning of its own laws," but "the appropriate weight in each case will depend on the circumstances," including "the statement's clarity, thoroughness, and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions." *Id*. at 1873–74.

The Supreme Court took "no position" on "[t]he correct interpretation of Chinese law." *Id*. at 1875. It also implicitly reaffirmed this Court's rule that "[t]he determination of foreign law is a 'question of law, which is subject to *de novo* review,'" 837 F.3d 175, 183 (2d Cir. 2016), by emphasizing that such a determination is "a ruling on a question of law," 138 S. Ct. at 1869.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

     2.     This Court correctly identified several serious flaws in the position advocated by Plaintiffs and embraced by the district court.

     The Ministry's interpretation is that "from 2002 to 2005 … Chinese law required Defendants to participate in the PVC ["price verification and chop"] regime in order to export vitamin C. This regulatory regime allowed vitamin C manufacturers the export only of vitamin C subject to contracts that complied with the 'industry–wide negotiated" price." 837 F.3d at 190. That interpretation rests on the 2002 Notice and other regulatory materials, *id.* at 189, that established a regime of "industry-wide negotiated prices for those export products subject to price review." A-3898-3899 (2002 Notice). There is no dispute that the 2002 Notice governed the conduct of vitamin C exporters. The only pertinent question is whether that regulation established a legal mandate to comply with PVC, as the Ministry and Defendants contend.

     Echoing Plaintiffs' contentions, the district court concluded that the 2002 Notice is textually ambiguous, SPA-83, and ultimately is best read *not* to impose any legal mandate. In particular, the district court read the Ministry's regulations as having granted vitamin C exporters "unilateral power to suspend" the minimum export price rule, and "power to effectively suspend verification and chop simply by not reaching any agreements in the first instance." SPA-84.

     This Court correctly found this "no mandate" interpretation "nonsensical," 837 F.3d at 190; no regulator would "incorporate into a government policy the concept of an 'industry-wide negotiated' price and require vitamin C manufacturers to comply with that minimum price point if there were no directive to agree upon such a price." *Id.* The district court also erred by "rel[ying] on evidence that China's price-fixing laws were not enforced to conclude that China's price fixing laws did not exist," thus "confus[ing] the question of what Chinese law required with whether the vitamin C regulations were enforced." *Id.* at 191–92. And it erroneously "attempted to parse out Defendants' precise legal role within China's complex vitamin C market regulatory framework" by relying on the "plain language" of "translations and … terms of art which are unique to the Chinese system." *Id.* at 190–91. That approach was practically guaranteed to generate mistakes. The Court was thus justified in rejecting the district court's "nonsensical" interpretation in favor of the "reasonable" interpretation presented by the Ministry, with or without deference.

     3.     If the Court does address deference, the Ministry's authoritative interpretation of the regulations it authored should be granted the same "substantial … weight" that "ordinarily" is owed to a foreign sovereign's interpretation of its own law, 138 S. Ct. at 1875, in view of the factors the Supreme Court identified as relevant.

     <u>The Ministry's Role and Authority</u>. Cases may arise in which it is unclear whether the foreign official appearing before the court truly has the power and competence to speak authoritatively for the foreign government. This is not such a case. The Ministry's authority to devise, implement, and interpret Chinese export law is clear and broad. The Ministry "is in charge of foreign trade throughout the country." Foreign Trade Law, art. 3 (promulgated by Standing Comm. 8th Nat'l People's Cong., adopted May 12, 1994, revised Apr. 6, 2004), <u>https://goo.gl/sHn37U</u>. Further, the Ministry has the "power to interpret [its own] rules"; those

# SIDLEY

Page 3

"[i]nterpretations of rules have the same force and effect as the rules themselves." Decree of the State Council, People's Republic of China (No. 322), Regulations on Procedures for Formulation of Rules, art. 33 (effective Jan. 1, 2002) (attached hereto as addendum); *see also* Br. of Chinese Profs. of Admin. Law as *Amici Curiae* (No. 16-1220), 2018 WL 1709076, at *5, *7, *20 (Chinese "courts [are] compelled to defer to" the Ministry's "legally binding and authoritative interpretations of the rules it establishes"). The Ministry has accordingly explained that its submissions present "the official views of the People's Republic of China." A-205. A diplomatic note submitted to this Court confirms the Chinese government's position that the Ministry's brief correctly "described China's compulsory requirements concerning vitamin C exports." Doc. 111-3. The submissions before this Court thus bear the full weight of the Chinese government.

<u>Consistency.</u>   From the outset, China has consistently maintained that, throughout the relevant period, Defendants had to participate in the PVC regime in order to export vitamin C.

Plaintiffs likewise have a consistent refrain. They have seized on an isolated phrase in a statement that China made to the World Trade Organization (WTO) in 2002 to argue that China admitted to dropping all controls of vitamin C exports, and that consequently, the Ministry's submissions here should not be trusted. *See* Appellees' Br. (Doc. 128) at 28. Plaintiffs have simply misread that statement, which did not specifically address PVC, and which neither the WTO nor the countries participating in those proceedings ever described as announcing a revocation of PVC. Context makes clear why international trade practitioners have never shared Plaintiffs' reading. China's 2002 statement was part of a "transitional review" following China's 2001 accession to the WTO. Under the headings, "*Non-automatic export licensing requirements*" and "[A]ny restrictions on exports through *non-automatic licensing* or other means justified by specific product," China stated: "[f]rom 1 January 2002, China *gave up export administration* of" (among other commodities) "vitamin C." D. Ct. ECF 397-11 at 55. (emphases added). Plaintiffs have assumed that by "g[iving] up" export administration, China meant it would no longer regulate vitamin C exports *at all*. That is wrong, and indeed implausible. At the time, continued regulation of vitamin C exports was vital to China's sovereign interests because fully deregulated exports, in the context of China's transition from a State-controlled economy, would have exposed China to anti-dumping claims. The 2002 Notice was explicit that the PVC regime's purposes included "avoid[ing] anti-dumping sanctions … on China's exports." A-3898–3899.

Thus, the "export administration" that China said it was giving up was not the *post-2002* policy of industrial self-discipline that required price and output coordination, but rather the *pre-2002 regime of non-automatic export licensing*, under which only "qualified vitamin C manufacturers and import and export companies were able to receive a Vitamin C export quota license." *See* A-161. The WTO adopted just this confined reading in 2006, specifically citing China's 2002 statement in concluding that "China abolished *export quotas and licenses* for … Vitamin C." WTO, Trade Policy Review: People's Republic of China, WT/TPR/S/161, ¶ 141 (Feb. 28, 2006), <u>https://goo.gl/iPtMaZ</u> (emphasis added). Indeed, as the 2002 Notice explained, "in order to accommodate the new situations since China's entry into WTO" while still "promot[ing] industry self-discipline," certain products were "no longer subject to supervision and review by

# SIDLEY

Page 4

the customs" but were instead "subject to [PVC] by the chambers." A-3898. In 2009, the United States *relied on the Ministry's amicus brief in this case*, among other sources, to argue to the WTO that "China coordinates export prices … through a 'system of self-discipline.'" A-1354. China responded by "admit[ting]" that until 2008, it "delegated certain implementing authority to [the Chambers] to coordinate export prices." A-1356. The WTO agreed: "China require[d] exporting enterprises to export at set or coordinated export prices or otherwise face penalties." A-1373.

China thus has consistently said, *including* in its 2002 statement, that it abandoned its prior *export licensing* regime in 2002. Plaintiffs' claim that the 2002 statement actually announced an annulment of *all* vitamin C export regulation is rebutted by the WTO's contrary 2006 reading, the 2002 Notice's declaration that regulation *did* continue, and the consensus in the WTO proceeding that, at least until 2008, Chinese law imposed minimum price thresholds via PVC—a regime that indisputably applied both to the raw materials at issue in the WTO proceeding and to vitamin C.

Context and Purpose. "[T]he Ministry's appearance in this case is historic because it is the first time any entity of the Chinese Government has appeared *amicus curiae* before any U.S. court." 837 F.3d at 180 n.5. That is so even though suits involving Chinese companies and important questions of Chinese law are not new. *E.g.*, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992). Moreover, China's submissions were cited by the United States and other sovereigns in WTO proceedings as supporting their claims against China itself. That context strongly supports the inference that the Ministry appeared in this litigation to provide a bona fide interpretation of its own regulations. It would make no sense for a sovereign appear in U.S. court for the first time to offer untrue statements that could be used against its *own* interests by other nations, all to support a handful of domestic companies facing litigation abroad.

Transparency. Both the district court and this Court suggested that "Chinese law is not as transparent as that of the United States." 837 F.3d at 190. The Supreme Court identified the "transparency of the foreign legal system" as one relevant factor, but did not explain how that factor should be addressed. This Court held that a "disparity" between the foreign legal system and the U.S. legal system cuts in favor of deference, at least on these facts, due to the danger that a district court's effort to parse an unfamiliar foreign legal system will lead to error. *Id.* at 190–91. That rationale was sound, and supports giving "substantial weight" to the Ministry's interpretation of the export regulations it administered. Further, the basic nature of the regulation governing vitamin C exports during the relevant time is apparent in the language of 2002 Notice. Under the PVC regime, the Chamber reviewed all export contracts for compliance with "the industry agreements"; if "the prices and quantities" were not "correct," the Chamber would deny a chop; and Customs would reject any "export contracts … not affixed with [a] chop." A-3915–16.

Clarity, Thoroughness, and Support. The Ministry's interpretation is clear, thorough, and amply supported by regulatory materials and established Chinese legal principles. The Ministry's initial 2006 *amicus* brief explained the historical background of the dispute, including the creation and relationship to the Chinese government of the organizations involved in the regulatory regime. A-155–160. It described at length the vitamin C export control regime adopted by China in 1997. A-160–164. It then explained that, "[i]n 2002, the Ministry changed the way in which compliance

# SIDLEY

Page 5

with the Chamber's 'coordination' was confirmed by abolishing the Export Licensing System and establishing a so-called 'verification and chop' system." A-164. "If the price was at or above the minimum acceptable price set by coordination through the Chamber, the Chamber affixed a special seal, known as a 'chop,' on the contract and returned it to the manufacturer." *Id.* Export was allowed "only if the contract bore the Chamber's 'chop'"; noncompliance thus meant "complete denial by Customs of the ability to export." *Id.*; *see* A-3974–3975 ("Procedures for Implementing the Verification and Chop System on Export Commodities"). As before, the 2002 regime was adopted to "promote industry self-discipline," now based on "industry-wide negotiated prices for those export products subject to price review." A-3898–3899 (2002 Notice); *see* A-164–165. The *amicus* brief further explained that this PVC regime remained in force throughout the relevant period, and identified the specific Ministry pronouncement that effected the extension. A-165. The Ministry then filed supplemental statements in 2008, *see* A-205–207, and 2009, *see* A-650–653, that expressly sought to respond to in-court and written criticisms of the initial *amicus* brief.

Plaintiffs have claimed that the Ministry's presentation was incomplete, charging that the 2006 *amicus* brief failed to distinguish between the 1997 and 2002 regulatory regimes. Indeed, they told the Supreme Court that "[t]he Ministry's *amicus* brief affirmatively misrepresented that the 1997 Vitamin C Subcommittee Charter was operative '[t]hroughout the relevant period.'" Reply Br. for Pet'rs (No. 16-1220), 2018 WL 1846870, at *16. That accusation was false. What the Ministry *actually* said is this: "Throughout the Relevant Period, the Chamber exercised its regulatory authority with respect to vitamin C exports through its Vitamin C Sub-Committee." A-159. That statement was completely accurate, and it was followed in the *amicus* brief by consecutive sections introducing the 1997 "Initial Regulations Mandating Coordination," A-160, and the 2002 "Revised Regulation of Export Pricing and Quantity: Verification and Chop," A-164.

Plaintiffs also complain that the Ministry's *amicus* brief did not discuss the revised charter issued by the Vitamin C Sub-Committee (an entity two levels below the Ministry) in 2002. This is truly nit picking. As this Court said, the Ministry's own 2002 Notice "demonstrates that … Chinese law required Defendants to participate in the PVC regime in order to export vitamin C." 837 F.3d at 190. No one doubts that the 1997 Charter differs from the 2002 Charter, but those differences support rather than undermine the Ministry's interpretation. Under the 1997 Charter, "[o]nly the members of the Sub-Committee ha[d] the right to export Vitamin C." D. Ct. ECF 70-8 at 2. That licensing restriction made membership in the Sub-Committee vital, and made it natural to attach export control enforcement to the requirements of membership. Under the 2002 Charter, in contrast, Sub-Committee membership was no longer necessary to export vitamin C, A-3916, consistent with China's representation to the WTO that "[n]on-automatic export licensing requirements" for vitamin C had been abolished, D. Ct. ECF 397-11 at 55. But that did not alter the reality that through the PVC system, the Chamber—under the Ministry's supervision—ensured that each manufacturer complied with the industry's price and volume restrictions. And Chinese law permitted export only under a contract that bore a chop attesting to the manufacturer's PVC compliance. *See* A-164–165, A-3898–3899, A-3969, A-3975. In this way, "the PVC regime, on its face, required Defendants to violate U.S. antitrust laws," 837 F.3d at 192, just as the Ministry has thoroughly explained to this Nation's courts in consistent fashion for a dozen years.

# SIDLEY

Page 6

Respectfully submitted,

 /s/ Carter G. Phillips
Carter G. Phillips

# ADDENDUM

Add1

# DECREE OF THE STATE COUNCIL OF THE PRC (NO. 322)

Decree of the State Council of the People's Republic of China

(No. 322)

The Regulations on Procedures for the Formulation of Rules were hereby promul-gated and effective as of January 1, 2002.

Premier, Zhu Rongji

November 16, 2001

Regulations on Procedures for the Formulation of Rules

## Chapter I General Provisions

**Article 1** These Regulations are formulated in accordance with the relevant provisions of the Legislation Law to standardize the procedures for the formulation of rules and to ensure the quality of rules.

中华人民共和国国务院令

（第３２２号）

现公布《规章制定程序条例》，自２００２年１月１日起施行。

总理　朱镕基

二〇〇一年十一月十六日

规章制定程序条例

第一章　总则

　　**第一条**　为了规范规章制定程序，保证规章质量，根据立法的有关规定，制定本条例。

Add2

**Article 2** These Regulations apply to the project establishment, drafting, examination, decision on, promulgation and interpretation of rules.

The rules formulated in violation of these Regulations are null and void.

**第二条** 规章的立项、起草、审查、决定、公布、解释，适用本条例。

违反本条例规定制定的规章无效。

**Article 3** The formulation of rules shall comply with the legislative principles established by the Legislation Law and conform to the provisions of the Constitution, laws, administrative regulations and other superior laws.

**第三条** 制定规章，应当遵循立法法确定的立法原则，符合宪法、法律、行政法规和其他上位法的规定。

**Article 4** The formulation of rules shall effectively safeguard the lawful rights and interests of citizens, legal persons and other organizations, and while prescribing the obligations they shall perform, provide the corresponding rights they have and the means by which the realization of such rights are guaranteed.

**第四条** 制定规章，应当切实保障公民、法人和其他组织的合法权益，在规定其应当履行的义务的同时，应当规定其相应的权利和保障权利实现的途径。

制定规章，应当体现行政机关的职权与责任相统一的原则，在赋予有关行政机关必要的职权的同时，应当规定其行使职权的条件、程序和应承担的责任。

Add3

The formulation of rules shall embody the principle of uniting the powers and responsibilities of administrative departments, and while vesting necessary powers in the relevant administrative departments, provide the conditions and procedures for executing such powers, as well as responsibilities they shall undertake.

**Article 5** The formulation of rules shall embody the spirit of reform, scientifically regulate administrative acts, and promote the shift of government functions towards economic adjustment, social management and public services.

The formulation of rules shall conform to the principle of simplification, unification and efficiency, assign identical or similar functions to one administrative department, and simplify administrative formalities.

**第五条**　制定规章，应当体现改革精神，科学规范行政行为，促进政府职能向经济调节、社会管理和公共服务转变。

制定规章，应当符合精简、统一、效能的原则，相同或者相近的职能应当规定由一个行政机关承担，简化行政管理手续。

Add4

**Article 6** Rules are normally titled "provisions" or "mea-sures", but they may not be titled "regulations".

**第六条**　规章的名称一般称"规定"、"办法"，但不得称"条例"。

**Article 7** The wording of rules shall be accurate and concise with the contents of their articles clear, concrete and operable.

In principle, the matters that have been clearly stipulated in laws or administrative regulations shall not be repeatedly provided in rules.

Rules shall not, in principle be arranged into chapters or sections other than the rules that are complex in content.

**第七条**　规章用语应当准确、简洁，条文内容应当明确、具体，具有可操作性。

法律、法规已经明确规定的内容，规章原则上不作重复规定。

除内容复杂的外，规章一般不分章、节。

**Article 8** With regard to matters which involve the powers of two or more departments of the State Council, and for which the conditions for formulating administrative regulations are not yet ripe and the formulation of rules are called for, the relevant departments of the State

**第八条**　涉及国务院两个以上部门职权范围的事项，制定行政法规条件尚不成熟，需要制定规章的，国务院有关部门应当联合制定规章。

有前款规定情形的，国务院有关部门单独制定的规章无效。

Add5

Council shall jointly formulate rules.

Under the circumstances provided in the preceding paragraph, the rules formulated by a relevant department of the State Council on its own are null and void.

## Chapter II Project Establishment

## 第二章　立项

**Article 9** The internal institutions or other institutions of departments of the State Council shall apply to such departments for project establishment when they deem that there is a need to formulate departmental rules.

The subordinate working departments of the people's governments of the provinces, autonomous regions, municipalities directly under the Central Government and comparatively larger cities or the people's governments at lower levels shall apply to the people's governments

　　**第九条**　国务院部门内设机构或者其他机构认为需要制定部门规章的，应当向该部门报请立项。

省、自治区、直辖市和较大的市的人民政府所属工作部门或者下级人民政府认为需要制定地方政府规章的，应当向该省、自治区、直辖市或者较大的市的人民政府报请立项。

Add6

of the provinces, autonomous regions, municipalities directly under the Central Government or the comparatively larger cities for project establishment when they deem that there is a need to formulate local government rules.

**Article 10** The necessity for formulating rules, the major issues to be solved and main systems to be established, etc. shall be stated in the applications submitted for project establishment of the formulation of rules.

**第十条** 报送制定规章的立项申请，应当对制定规章的必要性、所要解决的主要问题、拟确立的主要制度等作出说明。

**Article 11** The legislative affairs institutions of the departments of the State Council and the legislative affairs departments of the people's governments of the provinces, autonomous regions, municipalities directly under the Central Government and the comparatively larger cities (hereinafter referred to as

**第十一条** 国务院部门法制机构，省、自治区、直辖市和较大的市的人民政府法制机构（以下简称法制机构），应当对制定规章的立项申请进行汇总研究，拟订本部门、本级人民政府年度规章制定工作计划，报本部门、本级人民政府批准后执行。

Add7

legislative affairs departments) shall study the applications for project establishment of the formulation of rules on a consolidated basis, draft their own departmental or governmental annual working plans for formulating rules, and submit such plans to their own departments or the people's governments at the same levels for approval before implementation.

The titles of the rules to be formulated, the drafting units, the time for the completion of drafting, etc. shall be clearly provided in the annual working plans for formulating rules.

**Article 12** The departments of the State Council and the people's governments of the provinces, autonomous regions, municipalities directly under the Central Government and the comparatively larger cities shall strengthen leadership over the implementation of their annual

年度规章制定工作计划应当明确规章的名称、起草单位、完成时间等。

**第十二条** 国务院部门，省、自治区、直辖市和较大的市的人民政府，应当加强对执行年度规章制定工作计划的领导。对列入年度规章制定工作计划的项目，承担起草工作的单位应当抓紧工作，按照要求上报本部门或者本级人民政府决定。

年度规章制定工作计划在执行中，可以根据实际情况予

Add8

working plans for formulating rules. The units charged with the drafting of the rules in the said plans shall lose no time in doing so, and submit the draft rules to their own departments or the people's governments at the same levels for decision as required.

An annual working plan for formulating rules may, in light of actual conditions, be adjusted in the course of its implementation, and additional appraisals shall be carried out for the rules projects to be added.

以调整，对拟增加的规章项目应当进行补充论证。

## Chapter III Drafting

第三章　起草

**Article 13** The drafting of departmental rules shall be organized by the departments of the State Council; the drafting of local government rules shall be organized by the people's governments of the provinces, autonomous re-

**第十三条**　部门规章由国务院部门组织起草，地方政府规章由省、自治区、直辖市和较大的市的人民政府组织起草。

国务院部门可以确定规章由其一个或者几个内设机构或者其他机构具体负责起草工作，也可以确定由其法制机构起草或者组织起草。

Add9

gions, municipalities directly under the Central Government and the comparatively larger cities.

A department of the State Council may assign one or several of its internal institutions to draft rules, or assign its legislative affairs department to conduct or organize such drafting.

The people's government of a province, an autonomous region, a municipality directly under the Central Government or a comparatively larger city may assign one or several of its departments to draft rules, or assign its legislative affairs department to conduct or organize such drafting.

In drafting rules, relevant experts or organizations may be invited to participate therein, and relevant experts or organizations may also be entrusted with drafting.

省、自治区、直辖市和较大的市的人民政府可以确定规章由其一个部门或者几个部门具体负责起草工作，也可以确定由其法制机构起草或者组织起草。

起草规章可以邀请有关专家、组织参加，也可以委托有关专家、组织起草。

Add10

**Article 14** In drafting rules, in-depth investigations and researches shall be conducted, practical experience shall be summed up, and the comments of relevant organs, organizations and citizens shall be extensively solicited. The solicitation of comments may take the forms of written correspondence, forums, appraisal meetings, hearings, etc.

**第十四条**　起草规章，应当深入调查研究，总结实践经验，广泛听取有关机关、组织和公民的意见。听取意见可以采取书面征求意见、座谈会、论证会、听证会等多种形式。

**Article 15** When the rules being drafted directly involve the immediate interests of citizens, legal persons or other organizations, and relevant organs, organizations or citizens hold substantive disagreement with the rules being drafted, these rules shall be made public for comments; the drafting units may also hold hearings thereon. A hearing shall be organized in accordance with the following procedures:

**第十五条**　起草的规章直接涉及公民、法人或者其他组织切身利益，有关机关、组织或者公民对其有重大意见分歧的，应当向社会公布，征求社会各界的意见；起草单位也可以举行听证会。听证会依照下列程序组织：

Add11

(1) a hearing shall be open to the public; the drafting unit shall make public the time, venue for, and contents of the hearing 30 days before the hearing is held;

（一）听证会公开举行，起草单位应当在举行听证会的３０日前公布听证会的时间、地点和内容；

(2) the relevant organs, organizations and citizens that participate in a hearing shall have the right to put forward questions and make their comments with respect to the rules being drafted;

（二）参加听证会的有关机关、组织和公民对起草的规章，有权提问和发表意见；

(3) written records shall be made for a hearing to faithfully record the speakers' main viewpoints and reasons thereof; and

（三）听证会应当制作笔录，如实记录发言人的主要观点和理由；

(4) the drafting unit shall seriously study the comments expressed at a hearing, and give explanations on the handling of these comments and the reasons for

（四）起草单位应当认真研究听证会反映的各种意见，起草的规章在报送审查时，应当说明对听证会意见的处理情况及其理由。

Add12

such handling when submitting drafted rules for examination.

**Article 16** When drafting departmental rules that involve the powers and responsibilities of other departments of the State Council or are closely related to other departments of the State Council, a drafting unit shall adequately solicit the comments of these departments.

When drafting local government rules that involve the powers and responsibilities of other departments of the people's government at the same level or are closely related to other departments at the same level, a drafting unit shall adequately solicit the comments of these departments. A drafting unit shall sufficiently consult with the departments that disagree with its comments; where a consensus is not reached after such sufficient consultations, the drafting unit shall give

**第十六条** 起草部门规章，涉及国务院其他部门的职责或者与国务院其他部门关系紧密的，起草单位应当充分征求国务院其他部门的意见。

起草地方政府规章，涉及本级人民政府其他部门的职责或者与其他部门关系紧密的，起草单位应当充分征求其他部门的意见。起草单位与其他部门有不同意见的，应当充分协商；经过充分协商不能取得一致意见的，起草单位应当在上报规章草案送审稿（以下简称规章送审稿）时说明情况和理由。

Add13

explanations on the circumstances of and the reasons for such non-consensus when it submits the draft rules for examination (hereinafter referred to as the draft for examination).

**Article 17** A drafting unit shall, in accordance with the provisions, submit a draft for examination and the explanations thereof, the differing comments on the major issues therein and other relevant materials for examination.

A draft for examination to be submitted for examination shall be signed by the principle responsible person of the drafting unit; a draft for examination jointly drafted by several units shall be signed by the principle responsible persons of the said units.

In the explanations of a draft for examination, the necessity for formulating the rules, the main measures provided there-

**第十七条** 起草单位应当将规章送审稿及其说明、对规章送审稿主要问题的不同意见和其他有关材料按规定报送审查。

报送审查的规章送审稿，应当由起草单位主要负责人签署；几个起草单位共同起草的规章送审稿，应当由该几个起草单位主要负责人共同签署。

规章送审稿的说明应当对制定规章的必要性、规定的主要措施、有关方面的意见等情况作出说明。

有关材料主要包括汇总的意见、听证会笔录、调研报告、国内外有关立法资料等。

Add14

in, the opinions of relevant circles, etc. shall be stated.

The relevant materials mainly include the comments collected from various circles, written records of hearings, reports of investigations and researches and the relevant legislative materials from both at home and abroad, etc.

Chapter IV Examination

第四章　审查

**Article 18** Drafts for examination shall be uniformly examined by legislative affairs departments.

**第十八条**　规章送审稿由法制机构负责统一审查。

Legislative affairs departments shall examine drafts for examination mainly in the following aspects:

法制机构主要从以下方面对送审稿进行审查：

(1) whether they are in conformity with the provisions in Articles 3, 4 and 5 of these Regulations;

（一）是否符合本条例第三条、第四条、第五条的规定；

Add15

(2) whether they are in harmony or coordinated with the relevant rules;

（二）是否与有关规章协调、衔接；

(3) whether the comments of the relevant organs, organizations and citizens on the main issues addressed in the draft for examination have been correctly handled;

（三）是否正确处理有关机关、组织和公民对规章送审稿主要问题的意见；

(4) whether they conform to the technical requirements of legislation; and

（四）是否符合立法技术要求；

(5) other items that need to be examined.

（五）需要审查的其他内容。

**Article 19** Where a draft for examination fall under one of the following circumstances, the legislative affairs department may table the examination thereof or return it to the original drafting department:

**第十九条** 规章送审稿有下列情形之一的，法制机构可以缓办或者退回起草单位：

Add16

(1) the basic conditions for formulating the rules are not yet ripe;

（一）制定规章的基本条件尚不成熟的；

(2) the relevant institutions or departments disagree greatly with one another on the main systems provided in the draft for examination, and the drafting unit has not consulted with these institutions or departments; or

（二）有关机构或者部门对规章送审稿规定的主要制度存在较大争议，起草单位未与有关机构或者部门协商的；

(3) the submission of the draft for examination does not conform to the provisions in Article 17 of these Regulations.

（三）上报送审稿不符合本条例第十七条规定的。

**Article 20** Legislative affairs departments shall send drafts for examination or the main issues that the drafts for examination involve to the relevant organs, organizations and experts for comments.

**第二十条** 法制机构应当将规章送审稿或者规章送审稿涉及的主要问题发送有关机关、组织和专家征求意见。

Add17

**Article 21** Legislative affairs departments shall conduct on-spot investigations and researches at the grass root level into the main issues that the drafts for examination involve and solicit the comments of the relevant departments, organizations and citizens at the grass root level.

**第二十一条** 法制机构应当就规章送审稿涉及的主要问题，深入基层进行实地调查研究，听取基层有关机关、组织和公民的意见。

**Article 22** Where a draft for examination involves major issues, the legislative affairs department shall hold forums or appraisal meetings participated by relevant departments or experts to solicit comments, and to study and appraise the draft for examination.

**第二十二条** 规章送审稿涉及重大问题的，法制机构应当召开由有关单位、专家参加的座谈会、论证会，听取意见，研究论证。

**Article 23** Where a draft for examination involves the immediate interests of citizens, and the relevant organs, organizations and citizens disagree with one another, and the drafting unit have neither made it

**第二十三条** 规章送审稿直接涉及公民、法人或者其他组织切身利益，有关机关、组织或者公民对其有重大意见分歧，起草单位在起草过程中未向社会公布，也未举行听证会的，法制机构经本部门或者本级人民政府

Add18

public nor held appraisal meetings in the course of its drafting, the legislative affairs department may, upon the approval of its own department or the people's government at the same level, make the draft for examination public or hold hearings thereon.

Where a hearing is held, it shall be organized in accordance with the procedures provided in Article 15 of these Regulations.

**Article 24** Where the relevant institutions or departments disagree with one another on issues such as the main measures, administrative systems, the division of powers that a draft for examination involve, the legislative affairs department shall coordinate among these institutions or departments for reaching a consensus; where a consensus is not reached, the main issues, the comments of these institutions or departments and the proposals of the

批准，可以向社会公布，也可以举行听证会。

举行听证会的，应当依照本条例第十五条规定的程序组织。

　　**第二十四条**　有关机构或者部门对规章送审稿涉及的主要措施、管理体制、权限分工等问题有不同意见的，法制机构应当进行协调，达成一致意见；不能达成一致意见的，应当将主要问题、有关机构或者部门的意见和法制机构的意见上报本部门或者本级人民政府决定。

Add19

legislative affairs department shall be submitted to
its own department or the
people's government at the
same level for decision.

**Article 25** A legislative affairs department shall seriously study the comments from various circles, and it shall, upon consultation with the drafting
unit, revise the draft for
examination, and prepare
the draft rules and the explanations thereof. The explanations of the draft
rules shall include the
main issues to be solved,
the main measures to be
established by the formulation of rules and the circumstances of consultations with the relevant departments.

A draft rules and its explanations shall be signed by
the principle responsible
person of the legislative affairs department and
he/she shall put forward a
suggestion that the draft
rules and explanation
thereof be submitted to the
relevant meeting of its

**第二十五条** 法制机构
应当认真研究各方面的意
见，与起草单位协商后，对
规章送审稿进行修改，形成
规章草案和对草案的说明。
说明应当包括制定规章拟解
决的主要问题、确立的主要
措施以及与有关部门的协调
情况等。

规章草案和说明由法制机构
主要负责人签署，提出提请
本部门或者本级人民政府有
关会议审议的建议。

Add20

own department or the people's government at the same level for deliberation.

**Article 26** A draft rules the drafting of which is conducted or organized by a legislative affairs department shall be signed by the principle responsible person of the said legislative affairs department and he/she shall put forward a suggestion that the draft rules and explanation thereof be submitted to the relevant meeting of its own department or the people's government at the same level for deliberation.

**第二十六条** 法制机构起草或者组织起草的规章草案，由法制机构主要负责人签署，提出提请本部门或者本级人民政府有关会议审议的建议。

Chapter V Decision and Promulgation

第五章 决定和公布

**Article 27** Departmental rules shall be decided at ministerial meetings or general meetings of commissions.

**第二十七条** 部门规章应当经部务会议或者委员会会议决定。

地方政府规章应当经政府常务会议或者全体会议决定。

Add21

Local government rules shall be decided at the executive meetings or the plenary meetings of local governments.

**Article 28** When a draft rules is being deliberated, explanations may be made by the legislative affairs department or by the drafting unit as well.

**第二十八条** 审议规章草案时，由法制机构作说明，也可以由起草单位作说明。

**Article 29** The legislative affairs institution shall, on the basis of the deliberation opinions of the relevant meetings, revise the draft rules, prepare the revised draft rules, and submit it respectively to the depart-mental head, or the provincial governor, the chairperson of the autonomous region or the mayor for signing the decree to promulgate the rules.

**第二十九条** 法制机构应当根据有关会议审议意见对规章草案进行修改，形成草案修改稿，报请本部门首长或者省长、自治区主席、市长签署命令予以公布。

**Article 30** It shall be specified that the formulating department, the serial number, the title of rules,

**第三十条** 公布规章的命令应当载明该规章的制定机关、序号、规章名称、通过日期、施行日期、部门首

Add22

the date of adoption, the date of implementation, the signature of the departmental head, or the provincial governor, the chairperson of the autonomous region or the mayor, and the date of promulgation in a decree promulgating rules.

Rules formulated jointly by several departments shall be signed jointly by the heads of the relevant departments for promulgation, and the decree serial number of the department that led the formulating shall be used.

长或者省长、自治区主席、市长署名以及公布日期。

部门联合规章由联合制定的部门首长共同署名公布，使用主办机关的命令序号。

**Article 31** Departmental rules shall, upon signature for promulgation, be promptly published in the gazette of the department or in the gazette of the State Council and in the nationally distributed newspapers.

Local government rules shall, upon signature for promulgation, be promptly published in the gazette of the people's government at

**第三十一条** 部门规章签署公布后，部门公报或者国务院公报和全国范围内发行的有关报纸应当及时予以刊登。

地方政府规章签署公布后，本级人民政府公报和本行政区域范围内发行的报纸应当及时刊登。

在部门公报或者国务院公报和地方人民政府公报上刊登的规章文本为标准文本。

Add23

the same level and in the newspapers distributed within their respective administrative areas.

The text of the rules that are published in the departmental gazette, the gazette of the State Council or the gazette of the local people's government is the authentic text.

**Article 32** Rules shall be effective 30 days after the date of promulgation; but those rules that involve national security or the determination of foreign exchange rates or monetary policies as well as those the implementation of which will be impeded if they are not implemented promptly may be effective as of the dates of promulgation.

**第三十二条** 规章应当自公布之日起３０日后施行；但是，涉及国家安全、外汇汇率、货币政策的确定以及公布后不立即施行将有碍规章施行的，可以自公布之日起施行。

Add24

Chapter VI Interpretation and Submission for the Record

第六章　解释与备案

**Article 33** The power to interpret rules belongs to the formulating organs of rules.

The formulating organs shall give interpretations to the rules that fall under one of the following circumstances:

**第三十三条**　规章解释权属于规章制定机关。

规章有下列情况之一的，由制定机关解释：

(1) the specific meaning of their provisions needs to be further defined; or

（一）规章的规定需要进一步明确具体含义的；

(2) after their formulation, new development makes it necessary to define the basis on which they are applied.

Interpretations of rules shall be proposed by the legislative affairs departments of the formulating organs with reference to the procedures for the examination of the draft rules

（二）规章制定后出现新的情况，需要明确适用规章依据的。

规章解释由规章制定机关的法制机构参照规章送审稿审查程序提出意见，报请制定机关批准后公布。

规章的解释同规章具有同等效力。

Add25

for examination, and they shall be promulgated after submission to and approval by the formulating organs.

Interpretations of rules have the same force and effect as the rules themselves.

**Article 34** Rules shall, with-in 30 days as of the date of promulgation, be submitted by the legislative affairs departments in accordance with the provisions of the Legislation Law and the Regulations on Submission of Regulations and Rules for the Record to the relevant organs for the record.

**第三十四条** 规章应当自公布之日起３０日内，由法制机构依照立法法和《法规规章备案条例》的规定向有关机关备案。

**Article 35** State organs, social organizations, enterprises and institutions, and citizens may put forward in writing suggestions for reexamination to the State Council where they deem that certain rules contradict with laws

**第三十五条** 国家机关、社会团体、企业事业组织、公民认为规章同法律、行政法规相抵触的，可以向国务院书面提出审查的建议，由国务院法制机构研究处理。

国家机关、社会团体、企业事业组织、公民认为较大的市的人民政府规章同法律、

Add26

or administrative regulations, and such suggestions shall be studied and handled by the legislative affairs department of the State Council.

State organs, social organizations, enterprises and institutions and citizens may also put forward in writing suggestions for reexamination to the people's governments of their respective provinces or autonomous regions where they deem that certain rules formulated by the people's governments of comparatively larger cities contradict with laws or administrative regulations or violate the provisions of other superior laws, and such suggestions shall be studied and handled by the legislative affairs departments of the people's governments of the provinces or autonomous regions.

行政法规相抵触或者违反其他上位法的规定的，也可以向本省、自治区人民政府书面提出审查的建议，由省、自治区人民政府法制机构研究处理。

Add27

Chapter VII Supplementary Provisions

第七章　附则

**Article 36** Decisions or orders with general binding force to be made or issued by the local people's governments at or above the county level that do not have the power to formulate rules according to law shall be made or issued with reference to the procedures provided in these Regulations.

**第三十六条**　依法不具有规章制定权的县级以上地方人民政府制定、发布具有普遍约束力的决定、命令，参照本条例规定的程序执行。

**Article 37** The departments of the State Council and the people's governments of the provinces, autonomous regions and municipalities directly under the Central Government as well as the people's governments of the comparatively larger cities shall frequently sort out their rules, and promptly revise or repeal those rules that are found to be inconformity with new enacted laws, administrative regulations or the provisions of

**第三十七条**　国务院部门，省、自治区、直辖市和较大的市的人民政府，应当经常对规章进行清理，发现与新公布的法律、行政法规或者其他上位法的规定不一致的，或者与法律、行政法规或者其他上位法相抵触的，应当及时修改或者废止。

修改、废止规章的程序，参照本条例的有关规定执行。

Add28

other superior laws or are found to be in contradiction with laws, administrative regulations or other superior laws.

The procedures for the revisions of and repeal of rules shall be implemented with reference to the relevant provisions of these Regulations.

**Article 38** The editing and publication of the collections of rules in official editions, in the languages of ethnic groups and in foreign languages shall be handled by legislative affairs departments in accordance with the relevant provisions in the Provisions on Administration of Editing and Publication of Collections of Regulations.

**Article 39** These Regulations shall be effective as of January 1, 2002.

**第三十八条** 编辑出版正式版本、民族文版、外文版本的规章汇编，由法制机构依照《法规汇编编辑出版管理规定》的有关规定执行。

**第三十九条** 本条例自２００２年１月１日起施行。

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2018, I caused the foregoing document to be served on all registered counsel through the Court's CM/ECF system.

/s/ Carter G. Phillips
Carter G. Phillips